IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

TOMMIE L. HILL, JR.

 Petitioner,

v.                No. 1:13-cv-01328-JDB-egb

TAMMY FORD,

 Respondent.

ORDER DIRECTING CLERK TO MODIFY RESPONDENT,
DENYING § 2254 PETITION,
DENYING A CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

  Petitioner, Tommie L. Hill, Jr., pleaded guilty to evading arrest and reckless endangerment and was tried and convicted of two counts of aggravated assault by a jury in the Madison County Circuit Court in Jackson, Tennessee. Proceeding *pro se*, Hill seeks federal habeas corpus relief challenging his aggravated assault convictions pursuant to 28 U.S.C. § 2254. For the reasons discussed below, the § 2254 petition is DENIED.[1]

## LEGAL STANDARDS

  The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

---

[1] The Clerk is DIRECTED to record Respondent as Tammy Ford.

1. <u>Merits Review</u>

Under the AEDPA, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A § 2254 claim challenging the petitioner's custody or sentence on state-law grounds thus fails to state a federal habeas claim. *Moreland v. Bradshaw*, 699 F.3d 908, 926 (6th Cir. 2012) (writ of habeas corpus may not issue "on the basis of a perceived error of state law") (citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984)).

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts. 28 U.S.C. § 2254(d). In that circumstance, federal habeas relief "may not be granted" unless:

> the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of [the Supreme] Court, [28 U.S.C.] § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); or . . . "involved an unreasonable application of" such law, § 2254(d)(1); or . . . "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

*Harrington v. Richter*, 562 U.S. 86, 100 (2011).

A state court's decision is "contrary" to federal law when it "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law or "decides a case differently than" the Supreme Court has "on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. An "unreasonable application" of federal law occurs when the state court "identifies the correct governing legal principle from" the Supreme Court's decisions "but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

There is little case law addressing the "unreasonable determination of the facts" standard of § 2254(d)(2). The Supreme Court has explained, however, that a state court's factual determination is not "unreasonable" merely because the federal habeas court would have reached

2

a different conclusion. *See Wood v. Allen*, 558 U.S. 290, 301 (2010). Although the Sixth Circuit has described the standard as "demanding but not insatiable," it construes the standard in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (quotation marks and citation omitted).

2. <u>Exhaustion and Procedural Default</u>

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The exhaustion provision is "designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

In light of this purpose, the Supreme Court has interpreted the exhaustion provision as requiring not mere "technical" exhaustion, *Coleman v. Thompson,* 501 U.S. 722, 732 (1991), but "proper[]" exhaustion. *Boerckel*, 526 U.S. at 848. A claim is technically exhausted when state remedies are no longer available to the petitioner. *Coleman*, 501 U.S. at 732 (citing 28 U.S.C. § 2254(b)). Technical exhaustion therefore encompasses not only situations where the petitioner fully presented his claim to the state courts, but also instances where the prisoner did not present his claim to the state courts at all or failed to present it to the highest available court, and the time for doing so has expired. *Boerckel*, 526 U.S. at 848; *Wood v. Ngo*, 548 U.S. 81, 92-93 (2006). If federal habeas courts were generally allowed to review such claims, the exhaustion provision's purpose of giving the state courts the first opportunity to resolve federal constitutional issues would be "utterly defeated." *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). "To avoid this result, and thus protect the integrity of the federal exhaustion rule," a claim must be "properly"

exhausted, meaning it must be "fairly presented" through "one complete round of the State's established appellate review process." *Boerckel,* 526 U.S. at 845, 848.

The exhaustion requirement works in tandem with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Id.* at 848. Broadly speaking, procedural default happens in two ways. A petitioner procedurally defaults his claim where he fails to properly exhaust available remedies (that is, fails to "fairly present" the claim through "one complete round" of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules has closed-off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007). *See also Boerckel*, 526 U.S. at 846, 848. Procedural default also occurs where the state court "actually . . . relie[s] on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729.

It is only when the petitioner shows "cause for the default and actual prejudice as a result of the alleged violation of federal law," or demonstrates that "the court's failure to consider the claim[] will result in a fundamental miscarriage of justice," that a federal court will review the merits of a claim that was procedurally defaulted. *Coleman*, 501 U.S. at 748-50 (citing *Murray v. Carrier,* 477 U.S. 478, 496 (1986)). A fundamental miscarriage of justice is met "where a prisoner asserts a claim of actual innocence based upon new reliable evidence." *Bechtol v. Prelesnik*, 568 F. App'x 441, 448 (6th Cir. 2014).

## BACKGROUND

1. Hill's Criminal Proceedings and Direct Appeal

In its opinion affirming the denial of post-conviction relief, the Tennessee Court of Criminal Appeals ("TCCA") summarized the criminal proceedings and direct appeal in Hill's case:

> [T]he petitioner was indicted by the Madison County Grand Jury for reckless endangerment, evading arrest, and two counts of aggravated assault based on his having fled in a vehicle from the police, reaching speeds of 85 to 100 miles per hour on a Jackson city street, and having then driven his vehicle toward two police officers, one of whom apparently shot the petitioner to avoid being struck by the vehicle. A hospital security camera apparently captured the petitioner's high-speed flight down a city street, but not the actions that formed the basis for the aggravated assault counts of the indictment. The petitioner subsequently pled guilty to the evading arrest and reckless endangerment counts and was tried and convicted by a jury of the aggravated assault counts. He was represented by counsel at his arraignment but elected to proceed *pro se* at trial, with the trial court assigning his original trial counsel to act as his elbow counsel at trial and sentencing. He filed his direct appeal of the convictions *pro se*, and on May 25, 2011, this court entered an order dismissing the appeal based on the petitioner's failure to file an appellate brief in the case.

*Hill v. State*, No. W2012-01472-CCA-R3PC, 2013 WL 1681212, at *1 (Tenn. Crim. App. Apr. 17, 2013), *perm. app. denied* (Tenn. Sept. 10, 2013).

2. Post-Trial Proceedings

The inmate filed a post-conviction petition seeking relief from his convictions, which was denied after an evidentiary hearing. (ECF No. 9-1.) The TCCA affirmed the lower court's decision and the Tennessee Supreme Court denied permission to appeal. *See Hill*, 2013 WL 1681212, at *1.

3. Hill's § 2254 Petition

Petitioner raises five grounds for habeas relief:

- Claim 1: He received ineffective assistance of trial counsel.

5

- Claim 2: The State failed to disclose exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

- Claim 3: The evidence was insufficient to support Petitioner's convictions for aggravated assault.

- Claim 4: His Fifth and Sixth Amendment rights were violated as result of the State's use of prejudicial evidence at trial.

- Claim 5: Petitioner's Fifth and Fourteenth Amendment rights were violated as a result of alleged prosecutorial misconduct.

(ECF No. 1 at 15-18.) Respondent argues that the ineffective assistance of counsel claim is without merit and that the remaining claims are procedurally defaulted. Ford contends in the alternative that the procedurally defaulted claims are also without merit. (ECF No. 17 at 7-21.)

## DISCUSSION

1. Claim 1**:** Ineffective Assistance of Counsel

Hill alleges that he received ineffective assistance of counsel when his elbow counsel failed to obtain surveillance videos from a Walgreens store and Exxon service station located near the scene of the assaults. He claims that the videos would "show that [he] did not aggravately [sic] assault anyone." (ECF No. 1 at 15.) According to the inmate, counsel had previously "represented clients charged with theft in that area which cause[d] her to . . . know[]" that there existed video surveillance from these stores. (ECF No. 20 at 1.)

Petitioner raised this ineffective-assistance issue in the post-conviction court. *See Hill*, 2013 WL 1681212, at *1, 3. Represented by appointed counsel, he testified at the post-conviction evidentiary hearing. *Id.* at *1. The court found that trial counsel had not been ineffective (*see id.* at 25), and the TCCA affirmed that ruling. *Id.* at *3. Because the inmate presented this ineffective-assistance issue to the TCCA, he properly exhausted his state remedies. *See Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (under Tenn. S. Ct. Rule 39, a

Tennessee prisoner exhausts his claim by raising it before the TCCA). The claim is therefore reviewable in this habeas proceeding.

A claim that the ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To succeed on this claim, a movant must demonstrate two elements: (1) that counsel's performance was deficient, and (2) "that the deficient performance prejudiced the defense." *Id.* "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a person challenging a conviction "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range of reasonable professional assistance." *Id.* at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' . . . Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' . . ." *Richter*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 687, 693).

7

The deference to be accorded a state-court decision under 28 U.S.C. § 2254(d) is magnified when reviewing an ineffective assistance claim:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles* [*v. Mirzayance*], 556 U.S., at 123, 129 S. Ct. at 1420 [(2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S. Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Richter*, 562 U.S. at 105.

Addressing Hill's contention that trial counsel had rendered ineffective assistance by failing to adequately investigate the case, the TCCA recounted, in pertinent part, the proceedings and testimony at the post-conviction hearing:

> At the beginning of the hearing, post-conviction counsel informed the court that he had issued subpoenas for videotape surveillance footage from an Exxon station and a Walgreens store that were in the vicinity of where the alleged assaults took place. He said he had received a response from the manager of the Walgreens stating that he did not have any of the surveillance videotape from the old building, which had been razed since the date of the petitioner's offenses. As for the Exxon surveillance tape, post-conviction counsel stated that he had had two subpoenas issued and served on the station, but no one had ever responded. He said he had informed the petitioner of the situation and offered to petition the court to continue the hearing and to issue a show cause order for the petitioner to obtain the tape, but the petitioner had instead asked that they proceed without it. Upon questioning by the post-conviction court, the petitioner affirmed that it was his wish to proceed with the evidentiary hearing rather than have the case continued and that he understood he was waiving any claim regarding the lack of the surveillance tape by his decision.
>
> The petitioner testified that trial counsel represented him throughout the course of his reckless endangerment and evading arrest cases, in which he entered guilty pleas because he was guilty of the offenses. He said he became unhappy with her representation in the aggravated assault cases because he was not guilty of those offenses, but counsel kept trying to get him to "cop a plea" rather than investigating the facts as he asked her to do. The petitioner explained that counsel

made no response and did nothing when he asked her to try to obtain any available surveillance tape of the alleged assault scene. The petitioner testified that since he had made that request of counsel, he had learned that she could have gotten surveillance footage from the Walgreens store and the Exxon station, as well as possibly from the police cars involved in the incident. The petitioner acknowledged that he had not seen any surveillance footage of the scene. He insisted, however, that the surveillance tapes from those businesses and/or the police vehicles would have shown what really happened that day, which was that he did not try to escape until after the police officer shot him and that the officer was standing to the side of his vehicle, instead of in front, when he drove off.

The petitioner also complained that counsel made no attempt to obtain the ballistics report of the incident, which, according to the petitioner, would have shown that the police officer fired his gun at the petitioner while the officer was standing to the side of the petitioner's vehicle.

The petitioner testified that he proceeded *pro se* after the court allowed his counsel to withdraw from representation. The post-conviction court, which had also presided over the trial, then clarified for the record that the petitioner had requested that he be allowed to proceed *pro se* and that the court had allowed him to do so after having a discussion with him about how much assistance he might need at trial. The petitioner acknowledged that trial counsel was assigned as elbow counsel to assist him in obtaining discovery materials and to advise him on courtroom procedure. He complained that counsel, in addition to not helping him obtain the essential evidence already mentioned, failed to advise him to object to the State's introduction of the hospital surveillance videotape and the two guns that the police discovered in his possession after his arrest. The petitioner stated that neither the hospital surveillance tape, which showed a location different from the scene of the alleged assault, nor the fact that he had a gun in his pocket and another gun in his glove compartment was relevant to his aggravated assault charges and that their introduction prejudiced the jury against him.

* * *

The post-conviction court denied the petition at the conclusion of the hearing, issuing oral findings of fact and conclusions of law, which it followed by a written order entered on July 10, 2012. Among other things, the court found that the advice given by counsel was "well within requirements of the law for elbow counsel"; that whether any videotape from the businesses ever existed, or, if so, whether it captured the aggravated assault scene, was purely speculative; and that the petitioner waived any objection to the State's introduction of evidence or the prosecutor's closing argument by not making a contemporaneous objection at trial or raising the issues in a motion for new trial or on appeal. This appeal followed.

*Hill*, 2013 WL 1681212, at *1-2.

The TCCA applied the two-part *Strickland* test to the facts adduced at the post-conviction hearing and concluded that counsel had not rendered ineffective assistance:

> To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see State v. Taylor,* 968 S.W.2d 900, 905 (Tenn.Crim.App.1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee).
>
> \* \* \*
>
> The petitioner contends on appeal that his elbow counsel was deficient in her representation, thereby prejudicing the outcome of his case, because she did not help him obtain "exculpatory" surveillance videotape from the Walgreens store and Exxon station, failed to advise him to object to the State's introduction of the hospital surveillance tape and the guns, and neglected to advise him to introduce the ballistics report to show that the police officer's gunshots were fired from the passenger side of his vehicle. We respectfully disagree. "Elbow counsel" is "an attorney who functions in a purely advisory role, without actively participating in the trial. A *pro se* defendant who is permitted such counsel may consult counsel for guidance and advice, but otherwise handles the defense of the case on his or her own." *State v. Small*, 988 S.W.2d 671, 672 n. 1 (Tenn.1999). As the post-conviction court noted in its order, the petitioner has not met his burden of showing that any surveillance tape even existed, much less that it was exculpatory in nature. The petitioner also failed to show the existence of any ballistics report or that, if it existed, it would have supported his claim that the police officer's bullets were fired from the side of his vehicle rather than the front. He has not, therefore, met his burden of showing that elbow counsel was deficient in her representation or that he was prejudiced as a result.

*Id.* at \*3.

Hill has not shown that he is entitled to relief under the AEDPA on Claim 1. First, the TCCA's determination was not "contrary to" *Strickland* because the appellate court expressly invoked *Strickland* and applied its two-part test to the facts. *See Williams*, 529 U.S. at 406 ("[A] state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.")

Second, the TCCA's ineffective-assistance determination was not based on an unreasonable determination of the facts or an unreasonable application of *Strickland*'s standards to those facts. *See* 28 U.S.C. §§ 2254(d)(1) and (2). The post-conviction court's conclusion that Petitioner had not shown that "any surveillance tape even existed, much less that it was exculpatory in nature," *Hill*, 2013 WL 1681212, at *3, was not an unreasonable factual determination. When offered an opportunity to try to prove the existence of an Exxon surveillance video, the defendant told his post-conviction counsel that he wanted to proceed with the post-conviction hearing rather than ask the court for a show cause order to secure Exxon's response to the subpoena served by his post-conviction counsel. *Id.* at *1. Hill "acknowledged that he had not seen any surveillance footage of the scene" and offered nothing to support the existence of any tapes except his "purely speculative" testimony. *Id.* at *2. The state court's factual determination is entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary, *see* 28 U.S.C. § 2254(e)(1), which Petitioner has not submitted. Based on the supportable factual findings, the TCCA reasonably concluded that counsel did not perform deficiently by failing to obtain any videos and that the inmate did not show that he was prejudiced by her conduct. Claim 1 is therefore DENIED.

2. Claim 2: *Brady* Violation

Claim 2 alleges that the prosecution failed to disclose exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. at 87. (ECF No. 1 at 15-16.) Specifically, Hill asserts that the prosecution withheld (1) videos from the Walgreens store and Exxon service station and a police patrol video, all of which he claims will show that he did not place any officer in harm's way with his vehicle; (2) statements to the police from "several" witnesses at the scene; and (3) a ballistics report that he alleges will show that Hardaway did not fire his gun from a position in

11

front of Petitioner's car, but from the side, proving that Hardaway was not in danger of being struck by the defendant's vehicle. (ECF No. 1 at 15-16; ECF No. 12 at 4-5; ECF No. 20 at 2-3.)

Petitioner did not raise a *Brady* claim on direct or post-conviction appeal. The time allowed under state law to present the claim has passed. *See* Tenn. R. App. P. 3(e); Tenn. Code Ann. §§ 40-30-102(a), (c) (setting one-year limitations period for post-conviction relief and setting forth "one-petition rule"); Tenn. Code Ann. § 40-30-106(g) ("A ground for relief is waived if the petitioner . . . failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented.") Hill thus procedurally defaulted the claim. *See Boerckel*, 526 U.S. at 848.

The inmate does not argue cause and prejudice to excuse the default. He alleges in his reply brief, however, that the Court's "failure to exercise diligence in this matter would result in a miscarriage of justice." (ECF No. 20 at 5.) Because Petitioner maintains that he is innocent of aggravated assault and is proceeding *pro se*, the Court construes his conclusory "miscarriage of justice" assertion as an allegation of actual innocence to overcome the default of Claim 2. An "actual innocence claim . . . is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Souter v. Jones*, 395 F.3d 577, 588-89 (6th Cir. 2005) (internal quotation marks omitted). To establish gateway actual innocence, a petitioner must present "new facts" which "raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Schlup v. Delo*, 513 U.S. 298, 317 (1995). Here, Hill has not presented any new evidence of his alleged innocence. Claim 2 is therefore procedurally barred.

In any event, the claim is without merit. Under *Brady*, "due process requires the prosecution to turn over evidence favorable to the accused and material to his guilt or

punishment." *Connick v. Thompson* 563 U.S. 51, 79 (2011) (Ginsburg, J., dissenting). To establish a *Brady* violation, a petitioner must show "(1) the evidence at issue is favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the State suppressed the evidence, either willfully or inadvertently; and (3) prejudice . . . ensued." *Skinner v. Switzer*, 562 U.S. 521, 536 (2011) (internal quotation marks omitted).

Here, the inmate has not shown that there was favorable evidence that the prosecution failed to disclose. He surmises that surveillance tapes from Walgreens and Exxon exist because he believes that in other criminal cases the police obtained tapes from these same stores at the same location. (ECF No. 1 at 16; ECF No. 20 at 1-2.) He also believes that the prosecution withheld the statements of other witnesses because only three statements were disclosed but "there [were] several people at the scene." (ECF No. 12 at 2.) In support of his allegation that a patrol car video was made, Hill states only that "when officers activated their blue lights, automatically video cam is activated which view[s] the scene of the traffic stop." (ECF No. 1 at 16.) And with regard to a purported ballistics report, he reasons that "the crime scene was investigated, pictures taken, crime scene blocked off, and shells casting [sic] (from the police officers['] guns) taken from the crime scene, so there should be a ballistic[s] report." (ECF No. 1 at 16.) Petitioner has offered nothing more than speculation to support his allegations about the existence of undisclosed evidence. *See Hill*, 2013 WL 1681212, at *3.[2] Claim 2 is DENIED.

---

[2] Hill has not requested an evidentiary hearing on his *Brady* claim. Even if he had, he would be required to do more than allege in a conclusory and speculative manner that the evidence he believes was not disclosed actually existed. "Generally, a habeas petitioner is entitled to an evidentiary hearing in federal court if the petition alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing. . . . [B]ald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or to require an evidentiary hearing." *Stanford v. Parker*, 266 F.3d 442, 460-61 (6th Cir. 2001) (citations and internal quotation marks

3. Claim 3: Insufficiency of the Evidence

Petitioner alleges that the evidence was insufficient to convict him of two counts of aggravated assault. (ECF No. 1 at 16-17.) He claims that Sgt. Hardaway's testimony that he was positioned in front of the defendant's car when the vehicle accelerated was contradicted by the testimony of ATF agent Chris Rogers and by Hardaway's own admission that his bullet shattered the passenger-side window, not the windshield. (*Id.*; ECF No. 20 at 3.) The inmate further asserts that Sgt. Wiser's testimony was insufficient to convict him of assault because Wiser "never stated he was in danger of being hit by [Petitioner's] car." (ECF No. 1 at 17.)

Hill did not raise an evidence-sufficiency issue on direct or post-conviction appeal and the time allowed under state law to present the argument has passed. *See* Tenn. R. App. P. 3(e); Tenn. Code Ann. §§ 40-30-102(a), (c); Tenn. Code Ann. § 40-30-106(g). The claim is thus procedurally defaulted. *See Boerckel*, 526 U.S. at 848. Because Petitioner has not argued that the default should be excused and unsuccessfully argues his actual innocence to overcome the default, Claim 3 is procedurally barred.

The claim is also without merit. The Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), provides the federal due process standard for evidentiary sufficiency in criminal cases and thus governs Hill's claim. *See Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (per curiam) (*Jackson* applies to sufficiency-of-the-evidence claims on habeas review under § 2254(d)); *Appanovitch v. Houk*, 466 F.3d 460, 488 (6th Cir. 2006) (same). In *Jackson*, the Supreme Court announced that "the relevant question" "on review of the sufficiency of the evidence to support a criminal conviction," is whether, "after viewing the evidence in the

---

omitted). Petitioner was given the opportunity, with the assistance of counsel, to discover and present evidence at his post-conviction hearing that the videos and a ballistics report existed, but did not make that showing. *See Hill*, 2013 WL 1681212, at *3.

light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original).

By not requiring a reviewing court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt," but, instead, whether "any" rational trier of fact could have so found, the *Jackson* standard is deferential to—that is, "gives full play to"—the role of the trier of fact "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." *Id.* (emphasis in original) (internal quotation marks and citation omitted). *See also Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam) ("*Jackson* . . . makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.").

The indictment alleged that Hill "intentionally and/or knowingly by use of a deadly weapon, to-wit: a motor vehicle, caused" Wiser and Hardaway "to suffer and/or fear imminent bodily injury, in violation of T.C.A. § 39-13-102." (ECF No. 16-1.) In Tennessee, an assault occurs when a person "[i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury." Tenn. Code Ann. § 39-13-101. A person who "[i]ntentionally or knowingly commits an assault . . . and the assault . . . [i]nvolved the use or display of a deadly weapon," commits an aggravated assault. Tenn. Code Ann. § 39-13-102. The evidence of aggravated assault in the defendant's case consisted primarily of the testimonies of Wiser, Hardaway, and Rogers. Contrary to the inmate's argument, the testimonies are sufficient to sustain his convictions for aggravated assault.

Sgt. Wiser testified that, as he attempted to open the driver's door of Hill's stationary car, the defendant accelerated the vehicle and began maneuvering it around the vehicles that had him

15

boxed-in. The defendant's actions made Wiser fear that Hill's car "was gonna run me over." Wiser was thrown onto the pavement in the oncoming lane of traffic and suffered an injury to his leg. (ECF No. 16-2 at 22-24.)

Sgt. Hardaway testified that he and Agent Rogers were stopped in a vehicle directly in front of Hill's car when Sgt. Wiser approached the driver's door to extract the defendant. Hardaway and Rogers then left their patrol car and moved toward Hill's vehicle. Hardaway testified that when he was "approaching the rear of [his police] vehicle" he heard the engine of the defendant's car revving and saw the wheels start to turn. The car "took off coming towards" him. Fearing for his life and those of others, Hardaway shot at the defendant in an effort to stop him. (*Id.* at 80-86.) On cross-examination, Hardaway acknowledged that his bullet went through the passenger-side window, but he explained that he was aiming for the windshield. He stated: "I was in motion and the vehicle was in motion. I'm a good shot, but there's a lot of things going on and adrenalin. I was focusing on the driver, but with the motion and the way things—the car was going and the direction I was going, [the bullet] ended up going through the passenger's side windshield." (*Id.* at 101-02.)

ATF agent Rogers testified that he was at the passenger side of Hill's vehicle with Sgt. Hardaway when he "heard . . . the engine was revving up" and "at that point [the defendant] turned the wheel in an effort to try to get the vehicle out of the boxed-in area that he was in." (*Id.* at 134-35.) The vehicle moved forward and to the left. "Once that happened, I observed Sergeant Wiser who was at the driver's side of the vehicle, he rolled back." (*Id.* at 135.)

Based on the testimony, a rational trier of fact could find Hill guilty of aggravated assault against Wiser and Hardaway beyond a reasonable doubt. The sergeants testified to all of the elements of aggravated assault, and Rogers' testimony corroborated their statements in large

16

part. Petitioner points out that Rogers' testimony that both he and Hardaway were at the passenger side conflicted with Hardaway's testimony that he was in front of the defendant's car at the time the vehicle accelerated. He says that Rogers' testimony, together with the fact that Hardaway's bullet shattered the passenger's window, prove that Hardaway was not in front of the defendant's car when it began to accelerate, so he could not have feared for his safety. The argument ignores *Jackson*'s admonition that it is the province of the jury "to resolve conflicts in the testimony." *Jackson*, 443 U.S. at 319. The jury was entitled to accept Hardaway's statement that he was in the path of the vehicle when it began to accelerate and also his explanation for why his bullet went through the passenger's window rather than the windshield. The jury need only have found that at some point in time Hill's use of the vehicle caused Hardaway "to reasonably fear imminent bodily injury." Tenn. Code Ann. § 39-13-101. Therefore, even if Petitioner had not defaulted his evidence-sufficiency claim, he would not be entitled to relief. Claim 3 is DENIED.

4. Claim 4: The State's Use of Prejudicial Evidence

Hill alleges that his Fifth and Fourteenth Amendment rights were violated by the State's use of prejudicial evidence. Specifically, he claims that the presentation to the jury of guns retrieved at the time of the arrest and a hospital surveillance tape showing part of the high-speed chase at a location different from the scene of the alleged assaults were irrelevant to the assault charges and highly prejudicial. (ECF No. 1 at 17.) Although on post-conviction appeal Petitioner raised an ineffective assistance of counsel claim relating to the admission of this evidence, he did not raise on direct or post-conviction appeal a stand-alone claim under a federal

theory, or even as a matter of state law.[3] The time for raising the claim in the state courts has passed. *See* Tenn. R. App. P. 3(e); Tenn. Code Ann. §§ 40-30-102(a), (c); Tenn. Code Ann. § 40-30-106(g). *See also Hill*, 2013 WL 1681212, at *2 (in the context of Hill's ineffective assistance claim, noting that "the petitioner waived any objection to the State's introduction of" the guns and hospital surveillance tape "by not making a contemporaneous objection at trial or raising the issues in a motion for new trial or on appeal.").

Petitioner thus procedurally defaulted the claim. He has not argued that the default should be excused and unsuccessfully argues his actual innocence to overcome the default. Claim 4 is procedurally barred and therefore DENIED.

5. Claim 5: Prosecutorial Misconduct

Claim 5 alleges prosecutorial misconduct. (ECF No. 1 at 18.) Specifically, Hill asserts that (1) the prosecutor "had knowledge that the Walgreens store and Exxon store had video surveillance" tapes but did not give them to the defendant; (2) there existed a patrol car video that the prosecution failed to disclose; and (3) the prosecution used the "false testimony" of "the ATF officer[]" to convict the defendant. (ECF No. 1 at 8; ECF No. 12 at 4-5.) Petitioner did not

---

[3] Claims challenging "[e]rrors by a state court in the admission of evidence" usually implicate only state laws, and therefore are typically "not cognizable in habeas corpus proceedings." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994). Due process is violated and habeas relief warranted only if an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness[.]" *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Petitioner, here, does not make that showing. *See e.g.*, *Goodwill v. Palmer*, No. 10-CV-821, 2013 WL 5442383, at *2-3 (W.D. Mich. Sept. 30, 2013) (although admission of suspected murder weapon into evidence was not necessary because defendant admitted he was at the scene and claimed self-defense, petitioner did not show a violation of due process); *Martin v. Beckstrom*, No. CIV.A. 12-83-KSF, 2013 WL 3192895, at *1 (E.D. Ky. June 21, 2013) (admission of "testimony of two additional alleged victims regarding other uncharged criminal acts" was not a basis for a federal due process claim where petitioner "failed to point to any Supreme Court authority holding that the admission of prior bad acts evidence violates due process or that the prior bad acts evidence admitted was so unfairly prejudicial that it rendered his trial fundamentally unfair or flawed.").

raise this claim on direct or post-conviction appeal and the time for bringing the claim in the state courts has passed. *See* Tenn. R. App. P. 3(e); Tenn. Code Ann. §§ 40-30-102(a), (c); Tenn. Code Ann. § 40-30-106(g). Because Hill has not argued that the default should be excused and unsuccessfully argues his actual innocence to overcome the default, Claim 5 is procedurally barred.

The claim is also without merit. As noted with regard to his *Brady* claim, Petitioner only surmises that surveillance and patrol car videos exist. Moreover, he does not identify what portion of the ATF agent's testimony he believes is false. Claim 5 is therefore DENIED.

The Court having found that Hill is not entitled to habeas corpus relief, the petition is DENIED. Judgment shall be entered for Respondent.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. §§ 2253(c)(2) & (3). Although a COA does not require a showing that the appeal will succeed, *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003), a court should not issue a COA as a matter of course. *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005).

In this case, there is no question that the petition should be denied for the reasons stated. Because any appeal by Hill does not deserve attention, the Court DENIES a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal

19

would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reasons it denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore DENIED.

IT IS SO ORDERED, this 16th day of March, 2017.

            s/ J. DANIEL BREEN
            CHIEF UNITED STATES DISTRICT JUDGE